## VAN DYKE v. GRIGSBY et al.

1. Plaintiff advanced money at various times to D., to loan for him on real property, under an agreement that D. was to guarantee the principal and a certain rate of interest, irrespective of what the money might earn. It appeared that D. kept a debit and credit account with plaintiff; crediting him with moneys received from all sources and debiting

him with the loans as made.  A mortgage was taken in D.'s name, with the knowledge of plaintiff, to secure one of the loans to a third person; and it was subsequently foreclosed, and the property bid in by D.  *Held*, that D. was not the agent of plaintiff, and hence he did not hold the legal title to the property as a resulting trust for plaintiff's benefit; nor was there an involuntary trust, within the meaning of Comp. Laws, §§ 3919, 3920.

2.  The execution of a deed by the grantor, and placing it among the grantee's papers, of which he had charge, but with no intention to deliver it except in case of his death, does not convey any title to grantee.

(Opinion filed May 21, 1898.)

Appeal from circuit court, Minnehaha county.  Hon. Joseph N. Jones Judge.

Action by John H. Van Dyke against Melvin Grigsby and Porter Peck to cancel a notice of *lis pendes* filed in a former action and to vacate and set aside a warrant of attachment issued in said action and the levy made thereunder and to quiet title to certain lands.  From a judgment for defendant plaintiff appeals.  Affirmed.

The facts are fully stated in the opinion.

*Rollin J. Wells*, for appellant.

Title acquired by an unrecorded deed is superior to that obtained by a purchaser at an execution sale under an attachment levied after the deed was made.  Baterman v. Backus, 4 Dak. 433; Robbin v. Palmer, 67 N. W. 949.

An agent is precluded from acquiring or obtaining any interest in land upon which he has loaned money for his principal adverse to his principal:  King v. Remington, 36 Minn. 25; Baldwin v. Allison, 4 Minn. 11; Jewett v. Miller, 10 N. Y. 405; Case v. Carroll, 35 N. Y. 388; Dutton v. Willmer, 32 N. Y. 312. The same rule applies to attorneys or agents.  Black  v.  Rail-

road 56 N. Y., 491; Yerkes v. Crum, 49 Mo. 422; Ringo v. Binns, 10 Peters 269. A trustee may not use or deal with the trust property for his own profit. Neither may any of his agents. Comp. Laws, §§ 3922, 3923; Terwilliger v. Brown, 44 N. Y. 240; Wormley v. Wormley, 8 Wheat. 422; Massie v. Watts, 6 Cranch 148; Moore v. Moore, 5 N. Y. 256.

From the relations of Day and Van Dyke a resulting trust in and to the lands in favor of Van Dyke arose. 1 Warvelle on Vendors, pp. 90, 234; Dueir v. Ford, 138 U. S. 587; Crocker v. Crocker, 31 N. Y. 509; Moffat v. Shephard, 2 Pin. 66; Bucks v. Swazey, 35 Me. 41; Michond v. Girod, 4 How. 551; Cooksin v. Richardson, 69 Ill. 139; Comp. Laws, § 3933. Grigsby as the agent or partner of Day notice of the trusteeship is imputed to him. Comp. Laws, §§ 3991, 3933; Oliver v. Piatt, 3 How. 333. Neither Day nor Grigsby could be innocent holders. Gardner v. Ogden, 22 N. Y. 327; 27 Am. & Eng. Enc. of Law 252; Trull v. Trull, 13 Allen 407; Wells v. Frances, 7 Col. 419; Viler v. Blodgett, 49 Vt. 270.

Judgment creditors never are considered purchasers for a valuable consideration and without notice and are not in equity allowed to hold against the *cestui que trust.* Story's Eq. § 410; 16 Am. & Eng. Enc. of Law, 828. A judgment lien is one only on the interest of the judgment debtor and therefore if he have no interest no lien attaches. Fitzgerald v. Miller, 63 N. W. 221; Moore v. Thomas, 36 N. E. 712; Freeman on Judg. §§ 357, 366; Black on Judg. §§ 420, 421; Atkinson v. Hancock, 25 N. W. 701.

Delivery of a deed is solely a matter of intention. 1 Warvelle on Vendors, pp. 502-513; Walker v. Walker, 42 Ill. 311; Reed v. Douthit, 62 Ill. 348; Bryan v. Walsh, 2 Gil-

man 566; Wright v. Wright, 77 Fed. 795; Timson v. Chamblin, 88 Ill., 397; Moger v. Allison, 63 N. W. 322.

*A, B. Kittredge* and *Melvin Grigsby,* for respondents.

The evidence conclusively shows that there was no resulting trust. A resulting trust does not arise by contract but by imp'ication of law from acts independently of an agreement. Mayfield v. Forsyth, 164 Ill. 133; Sheldon v. Harding, 44 Ill. 68; Holmes v. Holmes, 44 Ill. 168. Resulting trusts must not be declared upon doubtful evidence or even upon a preponderance of the evidence. Adams v. Burns, 96 Mo. 361; Johnson v. Quarles, 46 Mo. 424; Murphy v. Hanscome, 76 Ia. 192; Walker v. Snowden, 6 Pa. 731; Bates v. Kelly, 80 Ala. 142; Reynolds v. Caldwell, 80 Ala. 232; Philpott v. Penn, 8 West. 266; Shaw v. Shaw, 8 West. 266; Millard v. Hathaway, 27 Cal. 119; Lewen on Trusts and Trustees, p. 170.

The quit claim deed from Day to Van Dyke did not convey title because it was never delivered. Comp. Laws, § 3229; Hopkins v. Leek, 12 Wend. 105; Hardenburg v. Schommaker, 2 Johns 230. The date of a deed is only presumptive evidence of its delivery. It is repelled by proof of the continued possession of the grantor. Harris v. Norton, 16 Barb. 264; Fonda v. Sage, 46 Barb. 109; Cornes v. Platt, 6 Rob. 270; Stephens v. Railroad, 20 Barb. 332. Possession of a deed by the grantor at a period subsequent to its date repels the presumption of delivery. Elsey v. Metcalf, 1 Den. 323.

CORSON, P. J. This is an action brought by plaintiff to cancel a notice of *lis pendens* filed in an action wherein said defendant Grigsby was plaintiff, and one Frederick T. Day was defendant, and to vacate and set aside a warrant of attachment

issued in said action, and the levy made thereunder. so far as the same affects certain lands claimed by the plaintiff, and to quiet plaintiff's title to said lands. The findings and judgment were in favor of the defendants, and the plaintiff appeals. The defendant Peck was made defendant as receiver, and will not be further noticed in this opinion.

It is undisputed that the legal title of record, at the time the *lis pendens* was filed, and warrant of attachment issued, and levy made thereunder on June 3, 1893, was in said Frederick T. Day; but the plaintiff claims (1) that the property at that time was held by said Day in trust for the plaintiff; (2) that said Day had, in fact, prior to the issuance of said warrant of attachment, conveyed said property to the plaintiff by deed dated in 1890, but not then recorded. In order to a proper understanding of the case, a somewhat full statement of the facts will be necessary: The plaintiff and said Day were in 1884, and prior and subsequently, residents of Milwaukee, Wis. Day was extensively engaged in the business of loaning money on farm lands in the Northwestern states, including the then territory of Dakota. The plaintiff advanced money to Day to loan for him, under a verbal agreement that Day was to guaranty all loans—principal and interest. This verbal agreement continued until March, 1893, when the parties made the following written agreement: ''In consideration of the guaranty by F. T. Day that I shall receive within five years from the date hereof (or so much further time as may be now mutually agreed upon), principal of the loans described in the annexed list, and interest now unpaid to me thereon, as is intended to be shown by said list, at the rate of seven per cent per annum, and interest on interest at the same rate, and the further agreement on

the part of F. T. Day that he will pay the taxes which it is necessary to pay on any of the lands by which these loans are secured, together with the expenses of any foreclosures or litigation that may be necessary to collect such loans, I, John H. Van Dyke, agree to accept the principal of said loans, together with interest thereon now unpaid to me, at the rate of seven per cent per annum, and interest on interest at the same rate, allowing said Day to retain any excess he may receive above such principal and interest, and also allowing him to manage such loans, and lease subject to sale, and sell and dispose of, any lands I may obtain through them, as he deems best; and I further agree to furnish conveyance of quitclaim or special warranty deeds (namely, with covenants against my own acts) of any lands I may acquire thereby. when they shall be sold by Mr. Day; and also; in case of sale of any such lands, I will accept, as a charge against my account on Mr. Day's books, the mortgages or contracts taken on such sales—principal and interest thereon at the rate of seven per cent per annum being guaranteed by said Day.    And I, the said F. T. Day, in consideration of above agreement on the part of John H. Van Dyke, hereby guaranty to collect within five years (or such further time as may be mutually agreed upon) the principal of the loans described in the list hereto attached, with interest unpaid to Mr. Van Dyke at seven per cent per annum, and interest on interest at the same rate.    I further guaranty the collection of principal, with interest at seven per cent, of all mortgages or contracts which from time to time may be taken on the sale by me of any lands John Van Dyke may acquire through said loans; and I agree to pay all taxes which may be necessary to pay on such lands, and also to pay the expenses of foreclos-

ure, or any litigation which may be necessary, under this agreement, to collect such loans, or any other expenses incident thereto. It is mutually agreed that the said respective loans shall be closed up as soon as they reasonably can be, inside of the said five years, and that as soon as each loan is paid, whether by sale of the security, or in any manner, that full settlement shall be made of that loan; and the principal thereon, together with interest, and interest on interest, due Mr. Van Dyke, shall be paid to him. Dated Milwaukee, March 1, 1893. F. T. Day. John H. Van Dyke." Mr. Day testifies the verbal agreement was substantially the same. In 1884 Mr. Day loaned $1,000 to one Hill, in Minnehaha county; taking a mortgage on the property in controversy in his own name, which mortgage was subsequently foreclosed by Day and the property bid in in his own name. Day assigned the mortgage to the plaintiff, but the assignment was never recorded; and in 1890 he executed a deed to the property to the plaintiff, but kept it among the papers relating to plaintiff's transactions in his own office; and it was not delivered to plaintiff until the fall of 1893—several months after the levy of the warrant of attachment. As to the manner in which the business between Day and the plaintiff was conducted, Mr. Day says: "When moneys came in from any source, we credited them to him, and charged him with loans as we made them. That is all—a debit and credit account." Mr. Sims, who was bookkeeper for six or seven years prior to 1893 for Mr. Day, says, in regard to their manner of doing business, that "Mr. Van Dyke with probably few exceptions, during that period, according to the books, was a creditor of Mr. Day. As loans would be paid in they would be reinvested, and oftentimes the money would lie

there quite a length of time before they were invested.   In 1891 there was a very large sum uninvested, and Mr. Day paid Mr. Van Dyke interest on it; that is, idle money that was lying un-invested." In relation to the business, the plaintiff says:   "A book was furnished me, containing a statement of each loan made for me by Mr. Day—the date of the loan, the rate of interest, how and when payable, etc.   This Andrew J. Hill loan is entered in that book in its regular order, which book was got up by Mr. Day for me at my request, to enable me to follow the loans.    When I would sign the receipts for the in-terest, I would charge them on my book; and, when they were paid to me I would enter them in it.    That would enable me to follow each loan."    In relation to the quit-claim deed executed by Day to plaintiff, Day says:  "I didn't deed it for the pur-pose of conveying title.  I deeded it for protection.  Those quit-claim deeds were deposited there for  the protection of the parties and not to convey the title, except in case of my death." As before stated, this deed was delivered to the plaintiff in the fall of 1893 by Day's assignee.

It is difficult to understand or define the precise nature of the transactions between Mr. Day and the plaintiff.  The plaintiff contends that Day, in making this loan and using plaintiff's money, was the agent of plaintiff, and that, conse-quently, the mortgage and deed taken on the foreclosure sale were in equity the mortgage and deed of the plaintiff, and that Day simply held the legal title in trust for the plaintiff.   But it will be observed that Day had guarantied the payment, not only of the principal, but of all interest, and interest on defer-red interest, to the plaintiff, whether the money was employed or not, and to pay interest on deferred interest, whether col-

lected or not; that he did all the business in his own name, and, as he expresses it, kept a debit and credit account with the plaintiff. It will be further observed that by the written agreement of March, 1893, the plaintiff, in effect, gave to Mr. Day an extension of five years in which to settle up his transactions with him, and among the claims included in the list or schedule is the Hill claim for $1,000. In view of these facts, and that Day guarantied the payment of the interest as well as the principal of the loans to the plaintiff, the contention of appellant that Day was the agent of plaintiff cannot be sustained. An agent does not ordinarily guaranty his principal against loss, or pay him interest when moneys in his hands are not earning interest. Nor does he ordinarily transact the business of the principal in his own name. The transactions between the plaintiff and Day would seem to be more in the nature of advances on the part of the plaintiff, under the special contract, to be loaned out by Day, and for which Day became personally liable to the plaintiff. It is clear that the plaintiff knew that all the mortgages were being taken in Day's name, and all foreclosures made at foreclosure sales were in Day's name; and, so far as the record discloses, the plaintiff made no objection to this method of proceeding on the part of Day. It is not claimed, as we understand appellant's brief, that there was any express trust on the part of Day, and the stipulations in the written contract are clearly inconsistent with the theory of any such trust on his part. The plaintiff agreed to hold any lands that he might have acquired by virtue of these loans in trust for Day, and to convey them upon Day's request. But there is no such agreement on the part of Day. In fact, the whole theory of the contract seems to be that Day was to have, not

only the legal title, but the sole and exclusive management, of the loans, and property that might be acquired by means of such loans, upon condition that Day guarantied to plaintiff the payment of his money and interest. There was no involuntary trust, within the meaning of Sections 3919, 3920, Comp. Laws. Day did not wrongfully detain the property; for, under his agreement and the course of business between Day and the plaintiff, it was understood that he was to hold the property in his name, to enable him to carry out his agreement with the plaintiff. The property was not obtained by fraud, accident, mistake, undue influence, in violation of any trust, or other wrongful act. Day seemed to have acted in perfect good faith, and as early as 1884 the plaintiff knew that the Hill mortgage was taken in the name of Day. The plaintiff evidently had great confidence in Day, and was willing to trust his money with him, and rely upon his agreement to make good to him the amounts that he might place in his hands. The transactions between the plaintiff and Day appear to have extended over a series of years, and in which the business was transacted in a manner similar to the one in controversy. We are of the opinion that the contention of appellant that the plaintiff was the equitable owner of the property at the time the warrant of attachment was issued cannot be sustained.

The contention of appellant that the plaintiff had acquired the legal title, at the time the warrant of attachment was levied, to the property, is equally untenable. The quit-claim deed executed by Day in 1890, and placed among the plaintiff's papers, kept by Day, was not by that act delivered to the plaintiff. As stated by Day, it was not intended to be a delivery, and was placed there as a precautionary measure—to be delivered in

case of Day's death.    Day intended, and the plaintiff expected that Day should pay to the plaintiff the amount of the loan, with 7 per cent interest; and this is one of the loans included in the schedule of claims annexed to the March, 1893, contract. The delivery of this deed by the assignee in the fall of 1893 could not affect the title of Grigsby, acquired through his attachment proceedings in June, 1893.    The circuit court was right, therefore, in concluding that plaintiff had shown no title to the property as against the defendant Grigsby; and the judgment and order denying a new trial are affirmed.